UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**GORDON G. STORMS,**

        **Plaintiff,**

v.                                                          Case No: 6:14-cv-222-Orl-41GJK

**COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**

## REPORT AND RECOMMENDATION

Gordon G. Storms (the "Claimant"), appeals from a final decision of the Commissioner of Social Security (the "Commissioner") denying his application for Supplemental Security Income benefits ("SSI"). Doc. No. 1. Claimant alleges an onset of disability as of February 8, 2009. R. 234, 270. Claimant argues that the Administrative Law Judge (the "ALJ") erred by failing to: (1) apply the correct legal standards to Claimant's hearing impairment at step-two, in determining Claimant's residual functional capacity assessment (the "RFC"), and at step-five of the sequential evaluation process; (2) discuss and adopt certain aspects of Drs. Eeltink and Sanchez's medical opinions, while giving them each "great weight"; and (3) state with particularity the weight given to five (5) global assessment functioning scores ("GAF scores"). Doc. No. 17 at 8-20. For the reasons that follow, it is **RECOMMENDED** that the Commissioner's final decision be **REVERSED** and **REMANDED** for further proceedings.

I.      **THE ALJ'S FIVE-STEP DISABILITY EVALUATION PROCESS.**

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is

disabled. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). In *Doughty v. Apfel*, 245 F.3d 1274 (11th Cir. 2001), the Eleventh Circuit explained the five-step sequential evaluation process as follows:

> In order to receive disability benefits, the claimant must prove at step one that he is not undertaking substantial gainful activity. At step two, the claimant must prove that he is suffering from a severe impairment or combination of impairments. At step three, if the claimant proves that his impairment meets one of the listed impairments found in Appendix 1, he will be considered disabled without consideration of age, education, and work experience. If the claimant cannot prove the existence of a listed impairment, he must prove at step four that his impairment prevents him from performing his past relevant work. At the fifth step, the regulations direct the Commissioner to consider the claimant's residual functional capacity, age, education, and past work experience to determine whether the claimant can perform other work besides his past relevant work.

*Id*. at 1278 (citations omitted). The steps are followed in order. If it is determined that the claimant is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

## II. STANDARD OF REVIEW.

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *accord Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.

*Edwards*, 937 F.2d at 584 n.3; *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The District Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings); *Parker v. Bowen*, 793 F.2d 1177, 1180 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied). The District Court "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner].'" *See Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

### III. ANALYSIS.

#### A. Hearing Impairment.

At the center of this dispute is the ALJ's handling of Claimant's hearing impairment, the evidence thereof and what limitations, if any, result therefrom. Doc. Nos. 17 at 8-14; 21 at 9-12. In short, the uncontroverted record evidence reveals that Claimant has a significant hearing impairment – in laymen's terms, he is moderately to severely hearing impaired in the right ear and severely impaired in the left ear. *See* R. 415-19, 472-74, 485, 491, 625-26. For example, on March 19, 2013, audiology testing showed Claimant had Air Conduction Pure Tone Average Scores of 65 in the right ear and 75 in the left ear (R. 625), which indicates moderate-severe hearing loss in the right ear and severe hearing loss in the left ear. *See* http://emedicine.medscape.com/article/1822962-overview#a01 (showing degree and effect of score results). The audiologist's report concludes that Claimant "relies mostly on lip-reading skills to communicate. He would greatly benefit from amplification <u>in each ear</u> to maximize communication abilities." R. 626 (emphasis added).

The ALJ conducted two hearings in this case. R. 32-82, 84-92. At the first hearing, Claimant testified that he had not been to an audiologist since 2008 because he could not afford it and, although he owned hearing aids, he can no longer hear what people are saying when using them. R. 89-90. Claimant attended the hearing with a hand-held sound amplifier that he held up to one of his ears. R. 90. The ALJ continued the hearing and sent Claimant to an audiologist, the test results of which are reflected above (*see* supra p. 3). R. 90, 625-26.

On July 29, 2013, at the second hearing, Claimant's counsel argued that Claimant has "significant hearing los[s]," which require hearing aids, but Claimant no longer has hearing aids that work and has to rely on a hand-held amplifier. R. 43-44. Claimant testified that he cannot afford new hearing aids. R. 68. The ALJ and the Claimant engaged in the following exchange:

> ALJ: Now, the audiologist that I sent you to noted that you do have a hearing problem, but you seem to be to hear me okay today. Is that true?
>
> C: Well, with this [amplifier] in my ears, yes. Without this in my ears, no. I could hear - -
>
> ALJ: Right, so it's correctable.
>
> C: Right.

R. 47. Claimant testified that he must hold up the amplifier to his right ear. R. 66. Claimant stated that he could not hear anything, even with the amplifier, in his left ear. R. 67.

At the hearing, the ALJ received evidence from a vocational expert (the "VE"). R. 68-82. The ALJ posed the following hypothetical question to the VE:

> [P]lease assume a hypothetical individual of the claimant's age, education, and vocational background capable of light work at the following additional restrictions: this person should avoid concentrated exposure to fumes, odors, gases, and concentrated exposure to hazards such as machinery and heights. This person would be limited to simple, routine tasks with up to three step commands, with occasional changes in the work setting, occasional judgment or decision making, and occasional interaction with the

>   general public and coworkers. Could this person do the past work
>   as a plumber helper?

R. 69. The VE responded that such an individual could not perform Claimant's past work as a plumber's helper, but such an individual could perform other work, such as a marker, routing clerk, or assembler. R. 69-70.

On cross-examination of the VE, Claimant's attorney attempted to question the VE about the effect of Claimant's hearing impairments and need for hearing aids or an amplifier, but the ALJ interrupted, stating: "No work-related limitations would result from that. . . ." R. 71. The following exchange then occurred between Claimant's counsel, the ALJ, and the VE:

>   ATT:   Unable to speak, unable to hear. Do the jobs that you've
>          mentioned require hearing?
>
>   ALJ:   [Counsel], the problem with your – you can ask the question.
>          The problem is we know that it's treated. We know that if
>          he puts that in he has a – he can hear me just fine. So I don't
>          know what your point is. If it's treatable, if it's correctable,
>          we don't have to consider it, which I know you're well aware
>          of.
>
>   ATT:   With regard to the apparatus that he has to wear, right now
>          it's amped by, sort of, like a Sony Walkman, like – and he
>          has it – he has to hold it in his hand. So how does that effect
>          his ability to do work any of the jobs you mentioned?
>
>   ALJ:   Don't answer that, [VE]. Once [counsel] poses a
>          hypothetical question that has actual limitations, work-
>          related limitations of function, you can answer the question.
>
>   ATT:   Okay. Assuming hypothetically that the claimant can work
>          a light-duty job that requires being able to sit for two hours;
>          standing or walk for eight – six hours; lifting up to 20 pounds
>          occasionally; but he has to hold a – hold a amplifier in his
>          hand, sort of looks like a Walkman-type apparatus, how
>          would that – would he be able to perform his past relevant
>          work?
>
>   VE:    No.

ALJ: Keep trying. No, [VE], don't answer that. Wait until I tell you. That is not a proper hypothetical questions. Keep trying, [counsel].

ATT: Okay.

ALJ: And [VE], wait until I tell you [before answering].

VE: Okay.

ATT: All right. Assuming the same educational background as the claimant, a ninth grade education, assuming the same age as the claimant, assuming light duty limitation, and assuming that he was to wear a – hold on to an apparatus with his hand, it's a Walkman-type thing like you said playing with – listening to music type thing, could he perform his relevant work?

ALJ: Try again, [counsel].

ATT: What's wrong with the hypothetical, judge?

ALJ: You're not giving functional limitation of restrictions. You're just saying he has to hold something. That's not – that's not a restriction. That's not a proper hypothetical question.

ATT: Well, if he's holding something in his right hand then that would be – that would include limitation of use of the right hand. Or if he's holding it in his left hand, he'd be limited to – wouldn't be able to use his left hand for any functional work activities.

ALJ: What kind of limitation? That's what I'm – that's what you're not saying.

ATT: Handling, fingering, lifting, reaching, those are the limitations, your honor. Any type of –

ALJ: But you're not telling – you're not specifying to the degree. You're just saying it's a limitation. That could mean 1 percent or 100 percent. I have no idea what you're talking about, [counsel]. You have to ask a specific hypothetical question and you know that.

ATT: The limitations would be no use of – he would only be able to use one arm at a time during the entire work day because he's holding on to a Walkman-type of device. That's the

>>limitation.  Either he has to use his right arm or his left arm, but he can't use both.
>
>ALJ: So, [VE], do these jobs permit for one-armed work?
>
>VE: No, you honor.
>
>ATT: So if he's a one-armed – there wouldn't be any job in the national or regional economy of the claimant?
>
>ALJ: No, I just asked about the jobs that [the VE] testified to. Now, [VE] indicated those – there were – those would not be allowed.  Would there be any other work existing in significant number in the national economy for a person who is limited to just using one arm at a time?
>
>VE: No, your honor . . . if the individual were limited to use of only one arm, there would be accommodations that would have to be made.  So my answer would be that no, there are no jobs that exist in the national economy that this individual could perform.

R. 71-75.  Thus, the VE testified that there would be no jobs existing in the national economy for a hypothetical individual with Claimant's age, education, past-relevant work, and other vocational factors, who was limited to using only one arm at a time while working due to having to hold an amplifier up to one of his or her ears.  R. 74-75.

On August 27, 2013, the ALJ issued a decision finding Claimant not disabled.  R. 15-26. At step-two of the sequential evaluation process, the ALJ determined that Claimant has the following severe impairments: chronic obstructive pulmonary disease; antisocial personality disorder; alcohol dependence; and degenerative disc disease.  R. 17.  The ALJ found Claimant's hearing impairment to be a non-severe impairment, stating:

>[T]he claimant presented for an audiological examination in 2008 with complaints of progressive hearing loss accompanied by bilateral tinnitus.  The claimant reported that the onset was about two years prior at which time he consulted with an otolaryngologist who advised him to use hearing aids.  The claimant reported that he has been unable to work, as he cannot hear his customers.  The audiological examination indicated significant hearing loss

> impeding the claimant's ability to hear conversational speech. The audiologist noted that the claimant would benefit from hearing aids.
>
> Thereafter, [i]n March 2013, the claimant presented for an audiological examination at the request of the undersigned. Following the examination, the audiologist noted that the claimant relies mostly on lip-reading skills to communicate, and he would greatly benefit from amplification in each ear to maximize communication abilities.
>
> At the hearing, the claimant testified that he uses an amplifier to hear. The undersigned notes that the claimant was able to hear and respond to questions without difficulty at the hearing. Accordingly, the claimant's hearing impairment is managed with a hearing amplifier; therefore the impairment causes no more than minimal limitation on the claimant's ability to perform basic work activities, and it is considered non-severe. . . .

R. 17-18. Thus, because Claimant uses an amplifier to manage his hearing impairment, the ALJ determined that it was not a severe impairment. R. 17-18.

The ALJ determined that Claimant retains the RFC to:

> perform light work . . . except the claimant should avoid concentrated exposure to fumes, odors, dusts, gases and hazards such as machinery and heights. The claimant is limited to simple and routine tasks involving up to 3-step commands with occasional changes in the work setting and occasional judgment or decision-making and occasional interaction with the general public and co-workers.

R. 19. Thus, the ALJ's RFC matches the ALJ's hypothetical question to the VE. *Compare* R. 19 *with* R. 69. In reaching the above-stated RFC, the ALJ gives "limited weight" (R. 24-25) to the opinion of Dr. David Carpenter, M.D., an examining physician, who opined that Claimant has "[b]ilateral hearing loss of a significant degree necessitating daily hearing aid use and it does affect communication to a significant degree." R 474. The ALJ stated that "claimant's hearing loss is managed with an amplifier. Therefore, the doctor's opinion is accorded limited weight." R. 24-25.

At step-five of the sequential evaluation process, the ALJ relied upon the VE's testimony to find that can perform work as a marker, routing clerk, and assembler. R. 25-26. The ALJ did not discuss the VE's testimony that an individual who only had the use of one arm due to holding an amplifier could not perform any work in the national economy. R. 25-26. The ALJ then found that Claimant is not disabled. R. 26.

Claimant argues that the ALJ erred by failing to find Claimant's hearing impairment to be a severe impairment at step-two, and in failing to properly consider any resulting functional limitations in the ALJ's RFC and at step-five of the sequential evaluation process. Doc. No. 17 at 8-14. The Commissioner maintains that substantial evidence supports the ALJ's determination that Claimant's hearing impairment is not a severe impairment, the ALJ properly considered it in determining Claimant's RFC, and that Claimant failed to come forth with evidence showing that the impairment affected his ability to work. Doc. No. 21 at 10-12.[1] For the reasons that follow, the undersigned disagrees with the Commissioner.

In order to constitute a severe impairment at step-two, an impairment must significantly limit an individual's ability to perform basic work skills. 20 C.F.R. § 416.920(c). In contrast, the Eleventh Circuit has found that an "impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984). As set forth above, the uncontroverted medical evidence of record establishes that Claimant has a significant hearing impairment, he requires hearing aids or amplification in both ears, and he relies primarily on lip

---

[1] The Commissioner does not directly address the VE's testimony that an individual who could not utilize one arm while working because they would have to hold amplifier to their ear could not perform work generally available in the national economy. Doc. No. 21 at 10-12.

reading to communicate.  *See* R. 415-19, 472-74, 485, 491, 625-26.  Claimant testified that he cannot afford hearing aids, he uses a hand-held amplifier to hear, and he has to hold the amplifier up to his ear in order to hear.  R. 47, 66-69, 89-90.  Although Claimant's testimony indicates his hearing in his right ear is correctable with a hand-held amplifier, there is little evidence indicating whether or not hearing aids would be effective.  R. 47, 66-68.  The VE testified that an individual who could only use one arm while working, in order to hold an amplifier up to his ear to hear, would not be able perform any work in the national economy.  R. 74-75.  Based on this record, it strains credulity that the ALJ could find that Claimant's hearing impairment does not constitute a severe impairment step-two.

In most factual scenarios, however, if an ALJ finds a severe impairment at step-two, then any failure to find another impairment severe will not constitute reversible error.  *See Farrington v. Astrue*, Case No. 3:09-cv-94-J-TEM, 2010 WL 1252684, at *4 (M.D. Fla. Mar. 29, 2010) (citing authority and explaining that finding a single impairment at step-two is all that is required so long as the ALJ considers all impairments, both severe and non-severe, throughout the sequential evaluation process, including in determining Claimant's RFC).  Thus, while the undersigned finds that no harmful error occurred at step-two, by failing to properly consider Claimant's hearing impairments and any resulting limitations therefrom in determining Claimant's RFC and at step-five, the ALJ's error is harmful.  The ALJ's does not address whether Claimant's hearing impairment is correctable with hearing aids or whether Claimant must hold an amplifier to his right ear in order to hear.  R. 15-26.  Similarly, at step-five, the ALJ fails to specifically address the VE's testimony (R. 74-75) that an individual who must hold an amplifier to his ear at all times while working cannot generally perform work in the national economy.  R. 25-26.  Without the ALJ specifically addressing and reconciling that testimony with the uncontroverted medical record

relating to Claimant's significant hearing impairment, it is impossible for the undersigned to determine whether the ALJ's RFC and findings at step-five are supported by substantial evidence. *See Phillips v. Barnhart,* 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (court may not reweigh the evidence or determine facts anew); *Falcon v. Heckler*, 732 F.2d 872, 829-30 (11th Cir. 1984) (remand appropriate for ALJ to provide explanation for basis of determination that depression did not significantly affect claimant's ability to work); *Brenem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled). Accordingly, it is **RECOMMENDED** that the Court find the final decision of the Commissioner is not supported by substantial evidence.[2]

**B. Remand Warranted.**

Claimant requests reversal with a remand for an award of benefits or, alternatively, a remand for further proceedings. Doc. No. 17 at 20-21. An award of benefits is only appropriate where the Commissioner has already considered all the evidence and the clear, cumulative effect of that evidence establishes disability beyond any doubt. *Davis v. Shalala*, 985 F.2d 528, 534

---

[2] The other issues raised by Claimant are not meritorious. With respect to Claimant's argument that the ALJ erred by failing to state with particularity the weight given to statements made by two non-examining physicians in Section I of their respective RFC opinions (Doc. No. 17 at 14-18), such statements do not constitute the doctors' actual opinions but are merely aids used by the physicians to render their opinions in Section III. *See Jones v. Comm'r of Soc. Sec.*, 478 F. App'x 610, 612 (11th Cir. 2012); *Land v. Comm'r of Soc. Sec.*, 494 F. App'x 47, 49-50 (11th Cir. 2012) (checking the box in Section I does not indicate the degree and extent of limitation but rather is an aide before the doctor renders actual RFC opinion). With respect to Claimant's argument that the ALJ erred by failing to state with particularity the weight given to various GAF scores, there is no rigid requirement that the ALJ state with particularity the weight given to GAF scores. *See generally Hurt v. Commissioner of Social Security*, 2013 WL 462005 at *4 (M.D. Fla. Feb. 7, 2013) (ALJ not required to comment on every GAF score). Courts in this district have also recognized that GAF scores are of "questionable value in determining an individual's mental functional capacity." *Wilson v. Astrue*, 653 F.Supp.2d 1282, 1293 (M.D. Fla. 2009) (quoting *Gasaway v. Astrue*, Case No. 8:06-CV-1869-T-TGW, 2008 WL 585113, at *4 (M.D. Fla. Mar. 3, 2008)). Moreover, the Court notes that the most recent edition of the Diagnostic and Statistical Manual of Mental Disorders does not utilize the GAF score scale, noting that it was recommended "the GAF be dropped . . . for several reasons, including its conceptual lack of clarity . . . and questionable psychometrics in routine practice." Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 16 (5th ed. 2013).

(11th Cir. 1993). An award of benefits may also be appropriate where the claimant has suffered an injustice. *Walden v. Schweiker*, 672 F.2d 835, 840 (11th Cir. 1982). In this case, it is not clear, beyond any doubt, that Claimant is disabled and Claimant has not suffered an injustice. Accordingly, it is **RECOMMENDED** that a **REMAND** for further proceedings is appropriate.

## IV.    CONCLUSION.

Based on the forgoing, it is **RECOMMENDED** that the Court:

1. **REVERSE** and **REMAND** the final decision of the Commissioner for further proceedings pursuant to sentence four of Section 405(g); and

2. Direct the Clerk to enter judgment in favor of the Claimant and against the Commissioner, and to close the case.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on January 6, 2014.

_____
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE


Copies furnished to:
Presiding District Judge
Counsel of Record

The Court Requests the Clerk
Mail or Deliver Copies of the Report and Recommendation to:

The Honorable Aaron M. Morgan
Office of Disability Adjudication and Review
SSA ODAR Hearing Office

Desoto Bldg, Suite 400
8880 Freedom Xing Trl
Jacksonville, FL 32256-1224